# *Ex parte* Branch & Co.

*Application for Prohibition to Chancellor.*

63  383
97  397
63  383
102  77
63  383
129  306
63  383
142  626
63  383
f143  2

1. *Chancellor's authority in vacation; when prohibition lies.*—The times and places of holding the several Chancery Courts, and the duration of the terms of the court, being prescribed by law, the chancellor can not hold court at any other time or place, nor exercise any judicial functions in vacation, except as specially authorized by statute, or by the rules of practice prescribed by this court under the power vested in it by law ; and any improper exercise, or attempted exercise by him, of such judicial functions in vacation, would be controlled by prohibition issued from this court.

2. *Same; confirmation of report of sale.*—Under the first rule of chancery practice, which was adopted in 1854, and which declares that the Chancery Court "shall be deemed always open," among other purposes, "for carrying into execution the decrees and orders of such courts and chancellors," the chancellor has power in vacation to confirm the register's report of a sale made under a decree foreclosing a mortgage, although such report is required to be read "in open court," and must lie over one day before confirmation.

Application by petition by Thomas Branch & Co. and others, for a writ of prohibition, or other remedial writ, directed to Hon. CHARLES TURNER, chancellor of the Middle Chancery Division, to restrain the confirmation by him, in vacation, of a report of sale made by the register in chancery at Selma, under a decree foreclosing a mortgage.

WATTS & SONS, and W. C. WARD, for the petitioners, cited *Cullum v. Casey & Co.,* 1 Ala. 351; *Byrd v. McDaniel,* 26 Ala. 582; *Garlick v. Dunn,* 42 Ala. 404 ; *Wightman v. Karsner,* 20 Ala. 446; *Coleman v. Smith,* 55 Ala. 368 ; 94th Rule of Chancery Practice.

PETTUS & DAWSON, with S. F. RICE, *contra,* cited the 1st Rule of Chancery Practice.

BRICKELL, C. J.—This is an application for a prohibition, or other remedial writ, directed to the chancellor of the Middle Division, commanding him to desist from proceeding, against the objection of the relators, who appear to be parties in interest, to the confirmation, on any other than a day of the appointed term of the court, of a sale of the railroad, franchises, fixtures, rolling stock, and other property of the Selma, Rome and Dalton Railroad Company, made by the register of the fifth district, under a foreclosure decree.

The ground of the application is, that, except in term time, at the time and place appointed by law, the Court of Chancery is without jurisdiction to render a decree of confirmation, and such decree, if rendered, would be void, producing disorder and confusion in the administration of justice, beclouding and embarrassing the rights of the parties in interest.

The constitution declares, "a Court of Chancery shall be held in each district, at a place to be fixed by law, at least once in each year." The constitutional mandate is satisfied, when a time and place is appointed by the General Assembly, for an annual continuous sitting of the court, in the full exercise of the jurisdiction with which it is clothed. A *term*, and a *place* of sitting, have been so long by the General Assembly appointed for every court of record, whether of superior or inferior jurisdiction, that involuntarily we regard them as elements of jurisdiction, and that rightfully judicial functions, unless it is otherwise expressly provided, can be exercised only when the court is in actual session at the appointed *time* and *place*. A court was, when the king was the sole dispenser of justice, defined as "the house or place where the king remaineth with his retinue." When and since the authority to hear and determine controversies has been delegated to constituted tribunals, a court is generally defined as "the place where justice is administered." When judges were created, to whom the judicial power residing in the sovereign was delegated, for a time they were accustomed to attend the sovereign, and exercise the power only while in attendance on him. One of the guaranties of *Magna Charta* is, that the court—the power exercising judicial functions—should not migrate with the king, but should hold its sittings at a place and time fixed and settled. If the law should not, however, appoint a place for the sitting of a court, it would doubtless rest in the power of the judge to appoint the time and place of the sitting; and the only limitation of the power would be, that the place should be within the territory of his jurisdiction. But, when the law prescribes the *time* and *place*, *time* and *place* are as essential elements of jurisdiction, as *subject-matter* and *parties*.—*Cullum v. Casey*, 1 Ala. 351; *Wightman v. Karsner*, 20 Ala. 446; *Garlick v. Dunn*, 42 Ala. 404. The interval between terms—that is, between the end of one term, and the beginning of another—would be vacation. During that interval, there would be no court; and a judgment or decree, rendered within it, would be *wanting in the color of judicial authority*. Freeman on Judgments, § 121.

The *time* and *place*, and duration of the terms of the Court

of Chancery, for the several districts composing the Middle Division, are prescribed by statute. Unless it is otherwise provided by law, it is only during these terms the courts are open, and judicial functions can be exercised. If the chancellor should, without the authority of law, during the interval between the terms, in vacation, assume to exercise judicial power, it would be the appropriate office of a writ of prohibition to compel him to desist. The point of controversy is, whether there is not authority of law, for the court, in the interval between the regular terms, to exercise the power of confirming or disaffirming a sale made by the register in obedience to it, and in the execution of a decree regularly rendered in term time.

The Code declares, that all the rules of chancery practice adopted by this court, in force at the time of its adoption, and not inconsistent with its provisions, are recognized; and further, power is granted to this court, "to adopt such other rules to regulate the practice of the Court of Chancery, or such modifications of the existing rules, as they may deem proper, and also to furnish forms of proceeding, to mould the process of the Chancery Court, and to prescribe rules of evidence in the same, from time to time, as experience may determine that the existing rules do not fully meet the ends of public justice."—Code of 1876, § 3915. In the exercise of the power conferred by this statute, this court, at the June term, 1854, adopted a body of rules, entitled, "Revised Rules, in conformity with the Code, for the regulation of the practice in chancery in the State of Alabama." Though entitled "*Revised Rules*," they were more than a mere compilation, amending, correcting, and rearranging former and existing rules. They wrought, in many respects, radical changes in the former practice, and introduced many new rules, designed to simplify the practice, and to speed the hearing and final determination of causes pending in the Court of Chancery. The first of these rules, yet remaining in force, unaltered and unchanged, is, "that the Courts of Chancery shall be deemed always open, for the purpose of filing bills, answers, and other pleadings; for issuing and returning original and mesne process, and commissions by the register; and for making by and before the chancellor all interlocutory motions, orders, decrees, and other proceedings not affecting the merits of causes, but preparatory to their hearing upon the merits; and, also, *for carrying into execution the decrees and orders of such Chancery Courts and chancellors.* This rule includes the hearing of appeals from the register; which motions and appeals can be heard, in vacation, at any time or place (within the State), upon ten days' notice of the

time and place of making the same, and the decree or order made and forwarded to the register from that or any other place."

It is obvious, that, as to the matters and judicial functions which are so carefully enumerated in this rule, the Court of Chancery is never closed—there is no vacation—no interval between terms, when of these matters the court or chancellor has not jurisdiction, and these judicial functions may not be exercised. As to these matters and functions, the court is to be *deemed*—that is, *judged, estimated*—*as always open;* and it may be remarked that, as to the hearing of appeals from the register, territorial jurisdiction is enlarged. The court or chancellor is not confined to the district in which the cause is pending, nor to his particular division; at any place within the State, such appeals may be heard. The plain purpose of the rule is, not only to speed the hearing of causes upon the merits, but the execution of the decrees and orders of the chancellor and of the court, whether the decree and order is interlocutory or final, so that there may not be unnecessary delay in the final determination of causes, to the reproach of the administration of justice.

A decree of foreclosure and sale, rendered on a bill to foreclose a mortgage, as was the decree we have before us, is a final decree in the sense of a court of equity, from which an appeal will lie. The subsequent proceedings on the decree—the sale, and its confirmation—are merely modes of enforcing the rights of the mortgagee, and for the benefit of the mortgagor.— *Whiting v. Bank of U. S.*, 13 Peters, 15; *Forgay v. Conrad*, 6 How. (U. S.) 203; *Bronson v. Railroad Company*, 2 Black (U. S.), 524. The sale, when made in pursuance of the decree, is incomplete; the decree of foreclosure and sale is not executed, until the confirmation by the court. It rests rather in negotiation: the bidder makes a proposition, which he has not the liberty of retracting, to the court, who is, in legal contemplation, the vendor, and which the court may accept or reject.—2 Jones on Mort. § 1637; *Hutton v. Williams*, 35 Ala. 503. Until acceptance, the sale is *in fieri.* Such being the character of the sale, and of the decree of confirmation, it seems to us that its confirmation is, within the letter and spirit of the first rule, a matter for which the Court of Chancery must be "*deemed always open.*"

A narrow construction of this rule would defeat the purposes of its adoption, and would unnecessarily cripple the powers of the court. The report of sale made by a register is certainly subject to exception, and is certainly one of those reports which, according to the 94th rule of chancery practice, must be read in *open court*, and lie over one day for con-

[Holly v. Bass', Adm'r.]

firmation. The term *"open court"* cannot have any other signfication, in this rule, than that which is given it by the first rule. *Open court*, in each rule, signifies the time when the court can properly exercise functions.

We cannot declare that the Court of Chancery was without jurisdiction to confirm, at the time the decree of confirmation was rendered, the sale made by the register. Having jurisdiction, whether error or irregularity has intervened in its exercise, is not now open to inquiry. The application must be denied.

STONE, J., not sitting.