## Beard v. Commonwealth.

(Decided October 3, 1912.)

### Appeal from Breathitt Circuit Court.

Criminal Law—Affidavit of Juror to Show Misconduct of Jury—New Trial.—It is doubtful if in any state of case the evidence of a juror will be received to impeach or discredit the finding of the jury; but, in criminal cases, section 272 of the Criminal Code expressly provides that the evidence of a juror shall not be heard to establish a ground for a new trial except to show that the verdict was made by lot.

ADAMS & HOLLIDAY and SCOTT & HAMILTON for appellant.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General for appellee.

Opinion of the Court by Judge Carroll—Affirming.

In an altercation that suddenly arose between the appellant Robert Beard and Dan Morris, the appellant stabbed Morris with a knife and from the effects of the wound he immediately died. The parties for many years and until a few moments before the homicide had apparently been friends. Aside from the appellant, the only eye witness to the tragedy was Robert Morris, a brother of deceased and the father-in-law of appellant. From his testimony it appears that the daughter of the deceased was receiving attentions from a young man named Riley, and that the deceased was very much opposed to their contemplated marriage. That Riley asked the appellant and the witness to see the deceased and try and persuade him to permit the marriage, which they agreed to do. After relating the circumstances of the meeting for the purpose mentioned, between himself, appellant and the deceased, he relates what happened as follows:

"I then spoke to my brother and told him that we wanted to talk to him a little while; and me and the deceased and the defendant all walked out from the schoolhouse towards the creek, and climbed upon a pile of cross-ties lying by the side of the road. After we sit down on the cross-ties, I told my brother Dan that we wanted to talk to him on a little buisness for another fellow, and Dan then says: 'I know what you want to talk about, and don't you name it to me,' and he said he would kill them both before they should marry. He seemed to be very mad. We all sat there for a short time, and there was nothing else, and the defendant then said: 'Uncle Dan, it might be better to let them marry; she might not do any better.' And Dan then said: 'Bob Beard, don't you talk to me; from what I've learned, you are at the head of every bit of this,' and then jumped off the ties, and stepped out in the edge of the road three or four feet from the defendant, and turned around, facing the defendant, and the defendant then said: 'Uncle Dan, you are mistaken entirely; I haven't had a thing in the world to do with it;' and the deceased then rushed at the defendant with his arm thrown back in a striking position, and I commenced to get off of the ties, and when I got off and looked around, I saw my brother was cut, and I took hold of him and called for

the other boys to run there, and Dan walked out a few steps and sank down and died. * * * I had no thought of any difficulty until it happened. I did not see any knife in the hands of either the defendant or the deceased before the trouble or afterwards.''

The defendant in his own behalf after giving evidence in substance the same as that of Robert Morris, his father-in-law stated that when he told the deceased that he had nothing to do with the matter, deceased struck him and knocked him off of the cross-ties, and then struck at him with a knife and cut the lapel of his coat; and that he then cut or stabbed the deceased. He further testified that when the trouble came up he had his knife open, cutting on the cross-ties, and that the deceased was whittling with his knife.

Two witnesses testified that a few months before the homicide occurred, they heard appellant say he would kill the deceased who was his surety in a bail bond if he surrendered him. This evidence was denied by the appellant, but it was shown that the deceased did surrender him as bail.

It was also in evidence that the appellant had served a full term in the penitentiary for false swearing.

After hearing the evidence and argument and being instructed, the jurors who had the right to give to the evidence such credit as it seemed to them entitled to returned a verdict finding the appellant guilty of murder and fixing his punishment at confinement in the penitentiary for life. The grounds of reversal relied on are, first, error committed in the instructions, and second, misconduct of the jury.

We have carefully examined the instructions and have reached the conclusion that they correctly submitted the law of the case.

The alleged misconduct of the jury was first called to the attention of the court in the motion and grounds for a new trial, and the ground relating thereto was supported only by the evidence of one of the jurors who declined to make an affidavit but testified in open court. The substance of the evidence of this juror is that after the case had been submitted to the jury, the officer in charge took the jury at night to a street fair or carnival, consisting of a number of side shows, that was located about a quarter of a mile from the boarding house at

which the jury lodged. That the jury remained at this street fair some two or three hours, visiting the different shows, and on their return from the street fair to their boarding house one of the jurors, who had been separated from the remainder of the jury for sometime, made his appearance and said that he had been looking everywhere for them.

The substance and effect of this juror's evidence is that the officer in charge of the jury permitted one of the jurors to separate himself from the others, and that the juror thus separated unattended by an officer wandered around in the crowd attending the side shows for probably an hour or more before he found or came in company with the other jurors. Of course, this was misconduct on the part of the juror, as well as the officer who had the jury in charge, and was of sufficient gravity to warrant a reversal of the case, if we could take cogniance of it.

Section 244 of the Criminal Code provides in part that—

"On the trial of offenses which are or may be punished capitally, the jurors after they are accepted shall not be permitted to separate but shall be kept together in charge of the proper officers;" and, in construing this section of the code, we have held in more than one case that a substantial observance of its provisions is indispensable, and that so flagrant a violation of it as was here committed is ground for a new trial. Commonwealth v. Shields, 2 Bush, 81; French v. Commonwealth, 100 Ky., 63; Vinegar v. Commonwealth, 104 Ky., 106; Thacker v. Commonwealth, 23 Ky. L. R., 745.

But, in the condition of the record, we are not at liberty to reverse the case upon this ground. As before stated, the only evidence of this misconduct is the testimony of the juror who declined to make an affidavit but gave his evidence in open court. It is extremely doubtful if the affidavit or evidence of a juror can be received in any state of case for the purpose of impeaching or discrediting the verdict of the jury of which he was a member. Taylor v. Giger, Hardin, 595; Heath v. Conway, 1 Bibb, 398; Johnson v. Davenport, 3 J. J. Mar., 390; Commonwealth v. Skeggs, 3 Bush, 19; Howard v. Commonwealth, 24 Ky. L. R., 612; Gleason v. Commonwealth, 145 Ky., 128.

But, independent of this line of authority on the subject, section 272 of the Criminal Code, conclusively determines the incompetency of a juror to sustain the ground relied on for a new trial. This section reads:

"A juror cannot be examined to establish a ground for a new trial except it be to establish that the verdict was made by lot."

It will thus be seen that a new trial cannot be granted on the testimony of a juror in any state of case, except the one mentioned in the section. It is manifest that the trial court in overruling the motion for a new trial, properly concluded that as under this section of the code the ground of misconduct on the part of the jury could not be made out by the testimony of a juror, there was no evidence in the form of affidavit or otherwise to support the ground of misconduct.

As we concur in this view of the matter, the judgment must be affirmed.