# Hopkins v. Commonwealth.

June 23, 1939.

Campbell Vansant, Special Judge.

B. M. James for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The appellant, Harry Gordon Hopkins, is appealing

from a judgment by which he was sentenced to confinement in the penitentiary for 21 years for the killing of Dewey Salisbury.

The killing occurred in a restaurant. The substance of the evidence for the Commonwealth, as furnished by numerous witnesses, is that the deceased was sitting in a booth in the restaurant with another man and two girls when the defendant came in; that the defendant entered the restaurant and walked over to the counter, and put his elbows on it, then, with his hand in his overall bib, walked over to where the deceased was sitting and made the remark, "You can't do me like you did my little brother"; that deceased made some remark to the effect that he did not want to but he could if he had to, and rose to his feet, but before he got all the way to his feet the defendant shot him, whereupon the deceased grabbed the defendant, who then started hitting him over the head with his pistol until he fell. The deceased had a pistol in a holster, but all witnesses for the Commonwealth testify that he never had the pistol in his hand and never made a motion to draw it. It develops from the testimony that the deceased had been a deputy sheriff up to several weeks prior to the killing and, while acting as such, had arrested the defendant's brother, and the conversation that occurred between the deceased and the defendant was with reference to this arrest.

Evidence for the defendant furnished by himself and a number of other witnesses was to the effect that when the defendant walked into the restaurant where the deceased was, the deceased called to the defendant to come over where he was and said to the defendant that the building was not big enough for the two of them; that the defendant replied that he did not want any trouble with him and did not want him to do him (the defendant) like he did his brother; that the deceased jumped to his feet and said, "I can do you the same way", and grabbed the defendant by the shoulder and reached for his pistol, whereupon the defendant shot him.

In the face of this evidence, it is contended by the defendant that self-defense was shown as a matter of law, and, while it is not expressly argued in the brief, it is intimated that the verdict is flagrantly against the evidence. The statement we have made of the substance

of the evidence is an obvious answer to both of these contentions. The evidence was highly conflicting and was ample to justify the jury in finding the defendant guilty of voluntary manslaughter. We have written so many times that the verdict of the jury will be disturbed only where it is so flagrantly against the evidence as to indicate passion and prejudice on the part of the jury that it is useless to cite authority to this effect.

Two objections are made to the instructions given by the court, but these objections are so utterly without merit that it is not worthwhile to encumber this opinion with a statement of them. It is sufficient to say that the instructions were the usual stereotyped instructions given in cases of this character and the form thereof has been many times approved by this court.

It is contended by appellant that the indictment was invalid because it was filed at the February term, 1939, of the Floyd Circuit Court and that this was a civil term at which grand juries are not impaneled in that court, and it is also contended that the record does not show any order calling the special March term at which appellant was tried, and further that the court had no authority to call a special term at that time because the regular judge was engaged in holding a regular term in another county in his district.

We are of the opinion, however, that there is no merit in any of these contentions since appellant made no affirmative showing that the grand jury was illegally impaneled or that the special term was not properly called. In the case of Young v. Commonwealth, 275 Ky. 98, 120 S. W. (2d) 772, 774, this court said:

> "* * * it is a universally accepted and applied presumption that a court of general jurisdiction—such as is possessed by circuit courts in this commonwealth—has performed its duty and followed mandatory requirements enjoined upon it by law. Furthermore, that the mere failure of its record to show such affirmative steps and actions will not be allowed to overcome that presumption. Therefore, when a state of case is presented creating the presumption, the burden is then cast on the one complaining of such non-compliances to prove the truth of his contentions before he can obtain the benefit of such failures on the part of the court, if any."

Another reason why appellant may not take advantage of these alleged errors is that the questions were not raised before the trial court. The defendant demurred to the indictment, but the demurrer was not sufficient to raise the objection that the grand jury was not properly formed. A demurrer raises only the objections specified in section 165 of the Criminal Code of Practice. If appellant had any objection to the formation of the grand jury, he should have made a motion to set aside the indictment as provided by section 158 of the Criminal Code of Practice. His failure to do so was a waiver of any objections to the summoning or formation of the grand jury. If appellant had any objections to being tried at the special term of court or by the special judge who conducted that court, he should have made seasonable objection, in order that the trial court might have an opportunity to pass on that objection before going into a trial of the case. This the defendant did not do, but the record shows that when the case was called for trial he announced ready and made no objections of any kind to any irregularity in calling the court or in the formation of the grand jury.

Not only were objections on account of these matters not seasonably made, but they were not presented to the trial court in the motion and grounds for a new trial. Errors of this character cannot be taken advantage of in this court where they were not presented to the trial court in the motion and grounds for a new trial, in order that that court might have an opportunity to determine whether or not a new trial should have been granted. City of Frankfort v. Jones, 207 Ky. 289, 269 S. W. 326; Fish v. Fish, 184 Ky. 700, 212 S. W. 586.

One of the grounds relied on in the motion and grounds for a new trial was that the names of the jurors constituting the regular panel of the jury were not drawn from the jury wheel by the presiding judge in open court and that the list of these jurors was not delivered by the court to the clerk in open court, but in the clerk's office. However, the affidavit of the regular judge who drew the names of these jurors from the jury wheel is filed, which shows that he drew these names from the wheel in open court. This affidavit states that when he completed the list, neither the clerk nor the deputy clerk was in the courtroom and that he

thereupon delivered the list to the deputy clerk in the clerk's office.

Section 2241, Kentucky Statutes, concerning the drawing of the jury from the wheel by jury commissioners, provides that after they have completed their labors, they shall return the wheel, together with the jury list, to the judge, who shall deliver them to the circuit clerk in open court. Section 2243, which deals with the drawing of the jury by the judge, provides in part:

> "Immediately after the judge has drawn said names from said drum or wheel case, he shall lock the same and deliver it and the aforesaid list to the clerk as above directed."

This language, taken in connection with section 2241, evidently means that the circuit judge shall deliver the jury list to the clerk in open court. However, we regard this provision of the statutes as directory and not mandatory. If such slight irregularities as this were permitted to be used as an excuse to obtain a new trial, there would be few trials in which a reversible error would not occur. In the absence of any showing that there was a possibility that the jury list had been tampered with, we are of the opinion that the failure of the circuit judge to comply literally with the directions of the statute was not in any way prejudicial to the defendant's substantial rights.

Another ground relied on in the motion and grounds for a new trial is that the jury wheel from which additional jurors were drawn after the regular panel was exhausted was not kept by the circuit clerk according to law and that the key to the jury wheel was not delivered by the regular judge to the special judge, but was given by him to the sheriff, who was a cousin of the deceased and actively engaged in the prosecution.

When the regular panel was exhausted, the special judge called for the jury wheel and there was considerable difficulty in finding it. The clerk did not have it in his possession, and it was finally found in the toilet in the private office of the circuit judge. This office was locked, as well as the toilet in which the jury wheel was stored, but someone produced a skeleton key and the doors were opened and the jury wheel obtained. It was finally opened by a key in possession of the sheriff.

The affidavit of the circuit judge states that the jury wheel had for some time been stored in the manner above recited, due to the fact that a number of W. P. A. workers were working in the back room of the clerk's office and that there was no place in the clerk's office in which the jury wheel could have been properly kept. He further states that at all times he had the key to the jury wheel in his possession and did not at any time turn it over to the sheriff or any person. Affidavit of the sheriff was filed showing that the key with which he opened the jury wheel was a key to a private box used by him and that he had never used it in unlocking the jury wheel and did not know that it would do so until he tried it on the occasion in controversy. He stated that he had never, prior to this time, touched the jury wheel.

The sections of the statutes above mentioned, 2241 and 2243, provide that the jury wheel shall be delivered by the judge to the clerk, but these statutes also contemplate that the judge at times has the jury wheel in his possession. The clerk is nothing more than the agent or clerk of the court for the purpose of keeping the jury wheel, and we are of the opinion that it may be lawfully kept by the circuit judge as well as by the clerk. The evidence introduced on this issue showed conclusively that the wheel was in the possession of the circuit judge and was probably more safely locked up than is ordinarily the case, and in the absence of any showing of indications that the jury wheel had been tampered with, we see nothing in this situation likely to have prejudiced the substantial rights of the appellant. Nor does the fact that the sheriff happened to have a key that could open the wheel furnish any reason for granting the appellant a new trial. We may say that it is a matter of common knowledge that the usual type of lock on jury wheels is a flimsy affair and, no doubt, someone in a crowd could nearly always produce a key that would unlock the lock on the ordinary wheel. The fact that someone does so furnishes no ground for saying that jurors drawn from that wheel were illegally drawn, especially in the absence of any intimation that the wheel had been tampered with. We conclude that the situation disclosed with reference to this wheel does not show that any substantial right of appellant was prejudiced.

Misconduct on the part of the jury was alleged in

the motion and grounds for a new trial. Affidavits were filed showing that while the trial was in progress and the jury in the jury box, the judge and counsel on both sides retired to an anteroom, the defendant probably being along, and that at this time a man walked over and talked to the jury. Another affidavit states that at that time a woman sitting by a sister of the sheriff and a cousin to the deceased "went over to the trial jury and stood by them for a period of at least five minutes and while there she was talking in a whisper to one of the jurors who was sitting on the back row and second from the end of the jury on the right".

We can hardly conceive that an attempt to corrupt or improperly influence the jury would be made while the jury was in the jury box in the courtroom under the eyes of spectators—this is possible, but, to say the least, highly improbable, and we will not assume that in the circumstances shown by these affidavits improper influences were brought to bear on the jury in the absence of definite evidence to that effect. From the affidavits, it is evident that the man who went over and talked to the jury did so in a manner such that those sitting around could hear him. According to the affidavit, the woman who talked to a juror was standing, and it seems unlikely that she could have conversed with any juror so that others in the jury box would not hear the conversation. In fact, the affidavit of a juror is filed indicating that this did not occur. As the juror to whom this conversation was addressed was not named in the affidavit, it was impossible for the Commonwealth to offer rebutting or explanatory evidence. Reasonable diligence or inquiry would have revealed this juror's name to appellant so that it could have been furnished to the court and thereby place the Commonwealth in position to investigate the matter. We venture to say that it is a rarity that a trial is ever conducted in which some one or more persons do not talk to the jury while they are seated in the jury box. Were we to hold that the situation shown here called for a reversal we would be setting a precedent which would make it difficult indeed to sustain a jury verdict in any case in which the jury was required to be kept together. We conclude that the affidavits do not present a situation justifying a reversal of the judgment.

The appellant also filed affidavits of jurors stating that some strange woman came into the room where

the women jurors were quartered and conversed with several of them. These affidavits are controverted by the affidavits of other jurors. These impeaching affidavits cannot be considered, since the affidavit of a juror may not be received to establish a ground for a new trial except it be to establish that the verdict was made by lot. Criminal Code of Practice, section 272; Beard v. Commonwealth, 149 Ky. 632, 149 S. W. 989; Allen v. Commonwealth, 234 Ky. 302, 28 S. W. (2d) 19; Lawson v. Commonwealth, 278 Ky. 1, 127 S. W. (2d) 876.

After a careful examination of the record, we are unable to find any error prejudicial to the defendant's substantial rights or anything indicating that he did not have a fair and impartial trial.

The judgment is affirmed.

The whole court sitting.