45 So.2d 761

**RUSH v. STATE.**

**8 Div. 450.**

Supreme Court of Alabama.

April 13, 1950.

Starnes & Starnes, of Guntersville, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

STAKELY, Justice.

C. C. Rush (appellant) was indicted for murder in the first degree. Trial of the case resulted in a conviction of murder in the second degree and a sentence of 35 years in the penitentiary. This appeal is from the conviction and sentence.

On May 20, 1947, C. C. Rush, his son Wesley Rush, his son-in-law Odis Rainwater, W. M. Rodgers and W. M. Rodgers, Jr. were plowing and sowing on the Rush farm which adjoins the farm of E. E. Ridgeway in Marshall County, Alabama. Two shots were heard apparently coming from the thicket on the boundary line between the two farms. Tendencies of the evidence show that bullets passed near Odis Rainwater, Wesley Rush and W. M. Rodgers, Jr.

A. P. Ridgeway, the deceased, was living at the home of his father E. E. Ridgeway. There had been a dispute over the boundary line between the two farms about two months prior to the present difficulty and some of the stakes showing the boundary line as fixed by the surveyor were still standing. Upon hearing the shots Wesley Rush ran to his father, who was about a hundred yards away, and told him that "A. P. was over there shooting at me." C. C. Rush thereupon stopped his mules, left the field in his jeep, went to his house about half a mile away, got his rifle and shortly returned. He first parked his jeep in the field and then proceeded toward the boundary between the two places.

A. P. Ridgeway, the deceased, was sitting on the front porch of his father's home along with his father, his mother, Charley Hilburn and the latter's daughter Vergie Hilburn. Tendencies of the evidence showed that when he saw C. C. Rush approaching he left the porch and went to meet him despite the efforts of his father and mother to deter him. In fact his mother, an elderly woman, went along with him and persisted in trying to stop him. Tendencies of the evidence showed that appellant had cursed the deceased and told him to come out there. According to tendencies of the evidence deceased stated in substance, as he left the porch, that the appellant would do him no harm. Tendencies of the evidence further showed that when the appellant was about 30 to 40 yards from the deceased, appellant standing on his property and deceased on the property of his father, appellant fired at the deceased missing him. Appellant then raised his rifle again, took aim and this time hit A. P. Ridgeway, who dropped dead in his tracks.

Tendencies of the evidence showed that deceased went down to meet appellant dressed only in a shirt and his working pants and was unarmed. Tendencies of the evidence further showed that a pistol belonging to the deceased was found after the shooting in a shed at the rear of the home of E. E. Ridgeway and tendencies of the evidence further showed that Charley Hilburn was seen to approach the body of deceased, lean down over the body and then proceed toward the shed. Tendencies of the evidence further showed that no one the officers arrived after the killing. The approached the body of the deceased until officers testified that there were no tracks around the body of the deceased and no weapon found on him.

I. On October 1, 1947 an order was entered by the court for a special term of

court to be held October 27, 1947 and on October 10, 1947 the judge drew the general venire for the special term from which the grand jury and petit juries for the special term were later drawn and impaneled.

By plea in abatement the appellant raised the defense that the venire from which the names of the grand jurors were drawn and impaneled was not drawn from the jury box in open court but was drawn behind locked doors with only the Judge, the Hon. J. S. Stone, the Sheriff and the Clerk of the Court being present. It is alleged in the plea in substance that members of the public and members of the bar were denied or refused admittance to the office of the circuit clerk while the venire was being drawn behind locked doors as aforesaid.

Section 285, Title 15, Code of 1940 provides as follows. "No objection can be taken to an indictment, by plea in abatement or otherwise, on the ground that any member of the grand jury was not legally qualified, or that the grand jurors were not legally drawn or summoned, or on any other ground going to the formation of the grand jury, except that the jurors were not drawn in the presence of the officers designated by law; and neither this objection nor any other can be taken to the formation of a special grand jury summoned by the direction of the court."

It is insisted that by reason of the provisions of the foregoing statute the matter set forth in the foregoing plea is not available for attack against the venire and the indictment. It is true that the statute limits objection to an indictment to the sole ground that the jurors were not drawn in the presence of the officers designated by law. But this court has pointed out that this statute is designed to prevent quashing of the indictment for mere irregularities and to obviate resulting delays in administration of justice. Vernon v. State, 245 Ala. 633, 18 So.2d 388. And further that the statute was not designed to nullify matters deemed essential to the established concept of trial by jury which offend basic principles of due process. Smith v. State, 34 Ala. App. 45, 38 So. 2d 341, certiorari denied 251 Ala. 559, 38

So.2d 347; Spooney v. State, 217 Ala. 219, 115 So. 308. It is, therefore, necessary for us to consider the effect of the drawing of the venire behind locked doors as alleged in the plea.

Section 30, Title 30, Code of 1940 provides in effect that the names of the jurors shall be drawn by the judge from the jury box in open court. This court has had occasion to define the meaning of the words "open court" a number of times and it is clear that open court means when the court is open for the transaction of the business of the court, that is "the time when the court can properly exercise its functions." Ex parte Branch, 63 Ala. 383; Zaner v. Thrower, 203 Ala. 650, 84 So. 820; Letcher v. State, 159 Ala. 49, 48 So. 805, 17 Ann. Cas. 716. But we think that the expression "open court" means that the court must not only be open for the transaction of business but also means that the court must be sitting openly, so that all persons who conduct themselves in an orderly manner may freely see and hear the proceedings in the court. Vol. 29 Words and Phrases, Perm. Ed., page 523. This does not mean that the judge must necessarily be acting in the court room. The office of the clerk is a part of the quarters provided for the court. Ex parte Morris, 252 Ala. 551, 42 So.2d 17. But we think there can be no objection that the judge in the presence of the sheriff and the clerk was drawing names of the jurors from the jury box in the office of the clerk. If the drawing was behind locked doors, this would not comport with the fairness and openness which should characterize the transaction of court business. The evident purpose of the requirement that the general venire be drawn in open court is to remove any idea that the jurors have been selected for some special case and to remove this important arm of the court from any suspicion of bias or prejudice. We take it for granted that proceedings of a star chamber character behind locked doors would tend not only to create suspicion but bring the court into disrepute. Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712. The provision of § 30, Title 30, Code of 1940 that the names of the jurors shall be drawn by the judge

from the jury box in open court is mandatory and must be obeyed. Zininam v. State, 186 Ala. 9, 65 So. 56.

The trial judge set the case down for hearing on the issues made by the foregoing plea. We have read the evidence with the greatest care. The proof shows that on orders from the judge the jury box was secured by the sheriff from the place where it is kept and carried to the office of the clerk and in the office of the clerk, the Judge, Hon. J. S. Stone, in the presence of the Circuit Clerk and the Sheriff proceeded to draw the names from the jury box. It is undisputed that when the drawing began the door of the office of the clerk was open and besides the three officers others were present and if at any time the door became closed, it was without the intention of any of these officers. In fact we wish to make it abundantly clear that neither counsel nor any one else imputes any evil or fraudulent intent to any of these officers. On the contrary it is conceded that each and all of them are held in the highest regard. The proof shows that the door was equipped with a spring lock and that if it were pulled to it would become locked. It may be that during the drawing of the names from the jury box some one in leaving the room may have pulled the door to and caused it to become locked. The proof certainly shows that during the time of the drawing others were free to enter and leave the room and did so. We are not satisfied from the evidence that the door did become locked, but if it did, it was a mere inadvertence and certainly no one who wished to be present when the drawing was made in order to observe the proceedings, was precluded from attending the drawing. The witnesses testified orally before Hon. Reuben Wright who presided as Judge in the trial of the case. He resolved the issues made by the plea in favor of the state. We see no reason to disturb his findings which we take as presumptively correct.

II. Various other defects in procedure are pointed out as grounds for quashing the indictment which may be enumerated as follows. (a) Twenty-one members were excused from jury duty without being examined under oath on voir dire as to their excuses or exemptions from jury duty. (b) Twenty days had not elapsed from the date of drawing the venire to the first day of the session. (c) The cards of fifteen members of the venire affirmatively show that they were not qualified because their ages were not given. (d) The venire from which the grand jury was drawn and impaneled contained the name of a person who had been convicted of a crime involving moral turpitude to wit grand larceny.

In Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712, it was shown that while § 285, Title 15, Code of 1940 refers to § 30, Title 30, Code of 1940 providing for the creation of the general venire, § 278, Title 15, Code of 1940 is the section to consider when § 38, Title 30, Code of 1940 is involved. See Smith v. State, supra. We set out § 278, Title 15, Code of 1940 as follows. "No objection to an indictment on any ground going to the formation of the grand jury which found the same can be taken to the indictment, except by plea in abatement to the indictment; and no objection can be taken to an indictment by plea in abatement except upon the ground that the grand jurors who found the indictment were not drawn by the officer designated by law to draw the same; and neither this objection, nor any other, can be taken to the formation of a special grand jury summoned by the direction of the court."

In Spivey v. State, 172 Ala. 391, 56 So. 232, it was pointed out that the statutes which are now sections 278 and 285, Title 15, Code of 1940, limited the objections to indictments as to the grand jury or grand jurors finding and returning the indictment to the one objection that it was not drawn in the presence of officers designated by law. We do not consider that any of the alleged defects as enumerated was sufficient to vitiate the indictment. Wilson v. State, Ala.Sup., 29 So.2d 294.

III. When the case was called for trial the defendant made a motion to quash the indictment and it appeared that the bailiff appointed to wait upon the grand jury (§ 186, Title 13, Code of 1940) was

seated just inside the door of the grand jury room for about five minutes while one of the witnesses was being examined before the grand jury. The court heard and passed upon the motion to quash and so we assume that the court in the exercise of its discretion allowed the motion to be filed. Smith v. State, 142 Ala. 14, 39 So. 329.

■ It is the policy of the law that the preliminary inquiry by the grand jury as to the guilt or innocence of persons charged with criminal offenses should be conducted in secret. The oath administered to the grand jurors is in keeping with this idea. §§ 73 and 74, Title 30, Code of 1940. Various reasons among others are given for this secrecy which is so different from publicity which generally attends judicial proceedings. One is that if the proceedings were public those charged before the grand jury might become informed and offered the chance to escape before the grand jury had completed its deliberations and arrests made. Another reason is that there should be entire freedom of discussion and deliberation by the grand jury which would not be the case if the proceedings were not secret and all disclosure of the deliberations of the grand jury prohibited. Blevins v. State, 68 Ala. 92.

■ However in the present case it is sufficient to say that the person who was in the grand jury room was the bailiff, an officer appointed by the court to wait upon the grand jury, and there is nothing to show that the bailiff gave the grand jury any counsel or expressed to them any opinion unfavorable to the defendant or did any act affecting their deliberations. He was not in the grand jury room when the grand jury was deliberating or passing on the indictment against the defendant in this case. In fact he did not mention the case to any one. Under these circumstances it does not appear to us that the appellant has suffered any injury from the presence of the bailiff in the grand jury room. Jones v. State, 150 Ala. 54, 43 So. 179; Blevins v. State, supra; King v. State, 208 Ala. 152, 93 So. 855; State v. Bacon, 77 Miss. 366, 27 So. 563; L.R.A.1916D, 1125; 24 Am.Jur. 862. The court acted correctly in overruling the motion to quash the indictment.

■ IV. The trial court permitted the state for impeachment purposes to prove by the oral testimony of the defendant that he had been convicted of manslaughter in the State of Arkansas. It is argued that there was higher and better proof of the conviction, namely a certified court record. Assuming that appropriate objection was made although this is doubtful, there is no merit in the contention. By virtue of the statute (§ 435, Title 7, Code of 1940) a witness may be examined orally touching his conviction for crime. Sims v. State, 14 Ala.App. 24, 70 So. 959.

■ It is further claimed that prejudicial error intervened when the court refused to allow the defendant to show that the conviction was had upon circumstantial evidence and that the trial court, the prosecuting attorney and the jury which convicted him all signed a petition requesting the Governor of the State of Arkansas to grant the defendant his full pardon and restore his civil rights and that the governor granted the petition and pardon. It is enough in answer to the argument to say that the defendant was allowed to testify that he received a full pardon from the governor of that state. The fact that the defendant convicted of a crime involving moral turpitude subsequently received full pardon does not abrogate the rule that such conviction goes to his credibility. Terry v. State, 25 Ala.App. 135, 148 So. 157. We think that the credibility of the defendant under all the circumstances, including the pardon, was for the jury. 58 Am.Jur. p. 402.

■ V. The court allowed the defendant to show that the deceased A. P. Ridgeway had made threats against him and that these threats had been communicated to the defendant. A number of witnesses for the defendant testified as to these threats. It is claimed that although the defendant was allowed to show the threats made by A. P. Ridgeway he was not allowed to show that A. P. Ridgeway had a pistol with him at the time he made the threats and was further not allowed to show where the deceased carried the pistol on his person.

There appears to be a misapprehension about this phase of the case and the record shows no error in the ruling in this regard. For example, Grady Raines, a witness for the defendant, testified that prior to the fatal difficulty the deceased came to his store and asked if he could leave the gun which he had on him at the store. He was advised by the witness to leave it somewhere else. According to the witness the deceased then said: "He was going to use that gun on the old man or he was going to make the old man use one on him." It is apparent that the defendant was allowed to show that the deceased was armed at the time the threat was made because not only was there proof that deceased had the pistol at the time the threat was made but the threat itself shows that he had the pistol at the time.

The witness Eddie Vernon Shores was asked the question by counsel for the defense: "Where was he carrying it when you saw him with it?" The court first sustained objection to the question and then said: "You mean where on his body?" Counsel, "Yes, sir." The Court: "I thought you meant some other locality. You can ask him that." The witness was then asked the question, "Where did he carry it on his body?" Answer. "I have seen him with it a number of times and he usually carried it in his bosom stuck down his belt."

In addition to the matters which we have discussed we have carefully examined the entire record and find no error therein.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.