94 So.2d 770

**Olan RUSHING**

v.

**STATE.**

**4 Div. 284.**

Court of Appeals of Alabama.

Jan. 31 1956.

Rehearing Denied Feb. 21, 1956.

Jas. G. Clower, Troy, for appellant.

John Patterson, Atty. Gen., Robt. Straub, Asst. Atty. Gen., Edmon L. Rinehart, of counsel, for the State.

**34**

HARWOOD, Presiding Judge.

This appellant has been found guilty under an indictment charging him with carnal knowledge of a girl over twelve and under sixteen years of age.

Prior to entering into trial the defendant filed a motion to quash the indictment on the grounds that some 21 talesmen jurors constituting a part of the general venire were drawn while the clerk was absent from the courtroom, and that as the judge drew the names of said jurors he would hand each card to the sheriff who either approved or disapproved the name, and the judge would either retain the prospective juror, or drop the card back in the box,

and that therefore the venire was selected and not drawn.

The State's demurrer to the motion to quash being overruled, issue was joined on the motion.

In support of the motion the defendant presented as witnesses Mr. Robert Newman, Clerk of the Circuit of Pike County, Mr. Ben Reeves, Sheriff of Pike County, and Mr. Walter Byars, a practicing attorney of the Pike County Bar.

Their testimony tends to show that during a regular session of court, and while another trial was in progress it was discovered that the list of regular jurors for the week was reduced below the number required. The court had the Sheriff bring the locked jury box into open court, and proceeded to draw the names of 21 jurors, living within five miles of the courthouse. These persons were later summoned as jurors and their names added to the list of regular jurors for that week.

Present at the time of the drawing were the Sheriff, the jury trying the other case, spectators, and virtually the entire bar of Pike County, including appellant's attorney.

It appears however that the clerk of the court was not present at the start of the drawing, but came into the courtroom after perhaps a half dozen names had been drawn from the box.

Sheriff Reeves testified that at Judge Paul's request he would examine each card as it was drawn by Judge Paul and inform him if the prospective juror lived within five miles of the courthouse. Sheriff Reeves testified that in making such determination he went both by information on the card, and by his knowledge of the place of residence of the juror. The names of those persons living beyond the five-mile limit were placed in one pile, and those living within the limit were placed in another. Sheriff Reeves' testimony was positive to the effect that the name of every person drawn who lived within five

miles of the courthouse was placed in the proper pile, and not a single one was returned to the box, and it was from these names that the clerk made up the venire now questioned.

Mr. Byars testified that he was in close proximity to the judge's bench at the time of the drawing, and observed the proceeding as he had cases to try that week.

He helped the Sheriff keep count of the cards, and saw the names on every card.

In response to a question as to whether any names that were in the "five mile" stack lived more than five miles from the courthouse, the witness replied:

"In my best judgment, I do not know exactly where they lived, but in my best judgment all of them were from Beat One, and as far as I know all of those who were placed in the final 26 lived within five miles of the Court House."

Mr. Byars further testified that the cards bearing the names of prospective jurors living more than five miles from the courthouse were put back in the jury box after the drawing had been completed.

Upon the above evidence the court denied the motion to quash the venire.

As we interpret the appellant's brief, it is his contention that the drawing of the talesmen jurors was illegal for two reasons: (1) The clerk was not present during the entire proceeding, and (2) the jurors were selected rather than drawn by virtue of the assistance furnished the court by the Sheriff.

Neither contention contains merit.

Section 62, Title 30, Code of Alabama 1940, provides for the drawing, summoning and empaneling of talesmen jurors, the deficiency in the regular venire to be made up by drawing the requisite number from those living within five miles of the courthouse, or who live within the corporate limits of any city of ten thousand population.

While Section 62, supra, provides merely that the court shall cause the deficiency to be remedied, such section must be read in pari materia with Section 30, Title 30, Code of Alabama 1940, which section pertains to the drawing of the regular jurors, and provides that such drawing must be in open court.

All provisions of Chapter 30 relative to the drawing of jurors are directory only. Section 45, Title 30, Code of Alabama 1940.

In the present case the court was in actual session and operation at the time the talesmen jurors were drawn.

In Rush v. State, 253 Ala. 537, 45 So.2d 761, 763, Justice Stakely had the following to say about the meaning of "open court" as used in Section 30, supra:

"Section 30, Title 30, Code of 1940 provides in effect that the names of the jurors shall be drawn by the judge from the jury box in open court. This court has had occasion to define the meaning of the words 'open court' a number of times and it is clear that open court means when the court is open for the transaction of the business of the court, that is 'the time when the court can properly exercise its functions.' Ex parte Branch, 63 Ala. 383; Zaner v. Thrower, 203 Ala. 650, 84 So. 820; Letcher v. State, 159 Ala. 49, 48 So. 805, 17 Ann.Cas. 716. But we think that the expression 'open court' means that the court must not only be open for the transaction of business but also means that the court must be sitting openly, so that all persons who conduct themselves in an orderly manner may freely see and hear the proceedings in the court."

Under the above concept, and the facts of this case, the drawing of the talesmen jurors was clearly in "open court." The temporary absence of the clerk at the start of the drawing was a mere irregularity and could not rationally be deemed

to have affected the validity of the proceedings or to have affected the drawing with fraud, which is the only ground of objection that can be taken to any venire of jurors. Section 46, Title 30, Code of Alabama 1940.

■ It was perfectly proper for the court, during the drawing of the talesmen jurors to seek information from Sheriff Reeves as to the locality of the residence of the prospective juror. It was shown that the Sheriff was familiar with the place of residence of the prospective juror, and such information was useful to the court, and necessary, in obtaining jurors living within five miles of the courthouse.

It will perhaps best serve the purposes of continuity to here note that in appellant's motion for a new trial one of the grounds was that since the trial the appellant had discovered that during the drawing of the talesmen jurors not all of the jurors living within five miles of the courthouse were placed on the venire. An affidavit by Mr. Byars in support of this ground was attached to and made a part of the motion. Mr. Byars also testified at the hearing on the motion.

The appellant also offered in evidence on the motion for a new trial the testimony of Sheriff Reeves and Mr. Newman taken on the motion to quash the venire.

The State also offered the testimony of Sheriff Reeves in hearing on the motion for a new trial. The motion for a new trial was denied.

■ We see no need for detailing the evidence taken on the motion for a new trial, for at most any conflict in the evidence so submitted raised a question of fact within the province of the court to resolve. Clearly the testimony of Sheriff Reeves, introduced by both the appellant and the State, was ample in its tendencies to support the conclusion reached by the trial judge, and we find no basis for disturbing such presumptively correct conclusion in this aspect.

In the trial below the principal witness for the State was Janice Turner, a girl 14 years of age at the time of the alleged offense.

Miss Turner testified that on a night in May of 1954 Billy Rushing, with whom she was acquainted, came to her home and asked her to go to a movie. After obtaining her father's permission she accepted Billy's invitation. Upon entering the automobile in which Billy had arrived she discovered that Ray Rushing was "hiding" in the car. Ray told her not to be scared, as they were going to get another girl for his date.

About two miles from the Turner home they were flagged by two men standing on the side of the road. Billy stopped and these two men were introduced as McBryde and Phillips. Actually the two men were Olan Rushing, the appellant, who was introduced as Phillips, and Donald Stewart, who was introduced as McBryde.

Stewart and the appellant got into the rear seat of the car.

The party drove to a store where beer was purchased and put in the car. They then "went on a piece," turned on a dirt read, back onto the highway, and eventually drove off the road and parked under a bridge at Walnut Creek.

All the men left the car except Billy Rushing and the prosecutrix. According to the prosecutrix Billy "was talking to me and trying to hug and kiss me a few times, and then when after he got through talking to me he got out of the car and then is when Olan (the appellant) got inside the car."

Olan tried to make her drink some beer, which she refused, and "soon after then he pushed me under the steering wheel and pulled my dress up and got my panties half way down, and kept pushing me then and I kept kicking him and fighting him until Donald Wade (Stewart) took over."

Olan was in the car with her at this time about twenty minutes. During their strug-

gle he had his hand on her private parts, had his private parts out, and attempted to have intercourse with her, but did not succeed.

When Stewart came to the car he stated to the appellant: "If she is that big a hell cat, if you can't handle her I can."

As the appellant left the car the prosecutrix also got out. She ran around the car about three times when she fell. Stewart then forced her into the car, and after a struggle succeeded in having sexual intercourse with her.

After this she begged to be taken home, and she was returned to her home. She immediately made complaint to her mother, Mrs. Eddie Turner.

Mrs. Turner, upon hearing the complaint, examined the prosecutrix. She found scratches and bruises upon her body and female organs, with bleeding from such organs.

The following day the prosecutrix' condition forced her to bed where she remained until she was examined by Dr. J. H. Colley about 7:30 P.M.

Dr. Colley testified that he found bruises on the prosecutrix' left forearm, bruises and scratches behind her left ear and on the back of her neck; she also had hemorrhagic areas and bruises around the pelvic hair line, with swelling and oedema of the labia, and a torn hymeneal ring which was bleeding from a fresh tear. Except for this tear the hymeneal ring was inact.

The defense evidence was directed toward showing that on the day in question the appellant and his younger brother Billy Rushing had gone to Donald Stewart's home for the purpose of going fishing with him, in Stewart's car. They drove to Ray Rushing's house to borrow a fish gig, and Ray joined the party.

Thereafter Billy and Ray, the two younger brothers decided to pick up two girls and go to a movie while the appellant and Stewart were gigging fish.

It was decided that all four would ride part of the way toward Janice Turner's house as Stewart did not want the younger boys driving his car on a dirt road. Before reaching the Turner home the appellant and Stewart got out of the car and waited until the two younger boys and Miss Turner returned.

The appellant testified that they drove by a house where Ray's prospective date lived, but as no lights were on they slowed down and then drove on by.

In this connection it should be noted that the prosecutrix, in her testimony, had denied that any effort was made at any time to get another girl.

They then decided, including prosecutrix, that the entire group would go fishing. A stop was made at a store and beer and flashlight batteries were purchased. On the way to the creek they stopped at Ray Rushing's house and picked up the gig.

The car was driven to within about 30 feet of the creek, and Billy Rushing and the prosecutrix remained in it, the other three going to the creek. After a while they returned to the car for beer.

The appellant got in the car and Billy got out. It was appellant's contention that at the prosecutrix' suggestion they changed to the back seat, and that the petting they did was at the prosecutrix' initiative and encouragement.

He realized he had "probably made a fool of himself" so he left the car and walked to where Billy and Ray were standing about half way between the car and the creek, or some fifteen feet. At this time Stewart walked up from the creek and asked where the prosecutrix was. Being told she was in the car Stewart stated he would go and talk with her. The appellant thereupon took the gig and returned to the creek.

The appellant claimed that the prosecutrix at no time during the entire night made any outcries.

He further denied that he and Stewart had used the names of McBryde and Phillips but testified on cross-examination that he had heard Stewart testify in his (Stewart's) trial that they had used such names.

The defense also introduced some five members of the grand jury which returned the indictment in this case.

Their testimony was to the effect that when the prosecutrix testified before that body she stated that the appellant did not put his hands on her private parts, nor take his out, and that the only thing he did was to pull her panties half way down.

The evidence is uncontradicted that this appellant did not have sexual intercourse with the prosecutrix.

Nor is there sufficient evidence to establish to the required degree that this appellant abused the genital organs of the prosecutrix in an attempt to carnally know her, there being no evidence arising to the required degree tending to show injury to her private parts by appellant. See Dawkins v. State, 58 Ala. 376; Montgomery v. State, 28 Ala.App. 442, 186 So. 589.

However, the State urges the sustention of the judgment on the theory that appellant was guilty as a conspirator, and an aider and abettor of Stewart who did carnally know the prosecutrix under the undisputed evidence of this case.

The principle urged by the State is summarized in Kabase v. State, 31 Ala.App. 77, 12 So.2d 758, 761, wherein Simpson, J., now of our Supreme Court, wrote:

"It was not contended that this defendant, Kabase, harmed the young woman. The State urged his conviction upon the theory of a conspiracy existing between Ellis and this defendant, and that Kabase was an aider or abettor of Ellis in consummating the crime.

"The law applicable to this phase of the case was finely exposited by our Presiding Judge in the recent case of Gandy v. State, 29 Ala.App. 485, 486, 198 So. 265, 266, where it was said: 'The law as to this is, whether in fact the violence was done by one, or more than one; whether they (the defendant and his companions) went there with a common purpose to do violence, or to see it done, or to aid or encourage the doing of it, or to lend assistance should it become necessary * * *. So, if, being present with or without preconcert, they entered into a common illegal purpose, and one or more of them did the deed of violence, and the others were present, aiding, abetting, encouraging, sanctioning, or giving countenance to the unlawful act, or ready to lend assistance if it should become necessary, and the jury, by the proper measure of proof, find either one of these categories to be true, then if the actor or actors be found guilty, the others are also guilty.' Also see Ellis v. State, where this statement of the principle was fully quoted, with approval, by our Supreme Court.

"It is cogently argued by his able counsel that the defendant was due a directed verdict because of the insufficiency of the evidence to establish any guilty connection of Kabase with said crime, but it is our conclusion, after a careful consideration of the entire evidence, that this contention is untenable."

While the Kabase case was reversed by the Court of Appeals on other grounds, the validity of the above doctrine is unquestioned.

The action of the appellant and Stewart in leaving the automobile some distance from the home of the prosecutrix, while Billy Rushing, their younger companion, prevailed upon her to leave her home upon a supposed invitation to see a movie; the appellant's action in making himself known to the prosecutrix under a false name upon re-entering the automobile; and his

action in turning the young girl over to Stewart upon Stewart's assertion that he could handle her if appellant could not, this after the appellant had himself unsuccessfully attempted to have her, together with the other facts above mentioned spell out facts cogent in their tendencies justifying the verdict and judgment of guilt under the principle of the Kabase case, supra.

 The lower court therefore did not err in refusing the appellant's request for the general affirmative charge, nor in denying appellant's motion for a new trial on those grounds questioning the sufficiency of the evidence.

During the cross-examination of two of the grand jurors questions were addressed by the Solicitor to each seeking to elicit testimony as to how they had voted on the return of the indictment against the appellant.

In the first instance no objection was interposed to the question, but as this line of questioning was pursued an objection was later interposed, and sustained by the court, who further excluded such previous testimony with appropriate instructions.

In the instance of the second grand juror the court sustained the timely objection to such question. Counsel thereupon made a motion for a mistrial, which the court denied. The court again instructed the jury that such evidence was entirely immaterial, and even the question was not to be considered by them.

In this state of the record we find no basis for a reversal of this judgment.

In the first instance the court sustained appellant's objection when it was interposed, and further excluded the answer made to the question to which no objection had been made.

In the second instance the appellant's objection was sustained to the question, and no answer was made.

The appellant's requested written charges which were refused were refused without error inasmuch as all such charges were either covered by the court's oral charge, or other charges given at appellant's request, or were faulty, or were affirmative in nature.

This cause is due to be affirmed, and it is so ordered.

Affirmed.