**Carl PRICE, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 7, 1962.

Rehearing Denied May 3, 1963.

John Y. Brown, Sr., John Y. Brown, Jr., Lexington, for appellant.

John B. Breckinridge, Atty. Gen., Joe Nagle, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, Carl Samuel Price, was indicted for the crime of murder, tried in the Pulaski Circuit Court, found guilty of manslaughter and sentenced to ten years' imprisonment.

The appellant, before the trial began, moved to discharge the entire petit jury panel on the ground that it had not been selected in accordance with the requirements of sections 29.115 and 29.135 of Kentucky Revised Statutes. Subsection (1) of the latter section is, in part:

> "At each term of circuit courts having terms, the judge shall, in open court, draw from the drum a sufficient number of names not to exceed sixty, to procure twelve persons to act as grand jurors for the next term of court and to secure not less than twenty-four nor more than thirty-two persons to act as petit jurors for the trial of civil and criminal cases at the next term; record the names upon paper, certify and sign it."

The requirement that at each term of court the judge shall draw the list in open

court for the succeeding term should be particularly noticed. Appellant contends that it was not met.

The testimony of the clerk of the Pulaski Circuit Court was taken and he stated that he was present when the panel was drawn from the wheel. It appears that the drawing was had in the vault of the circuit clerk's office. The vault is a large room about 30 x 25 feet. The circuit clerk's office is on a different floor from the circuit court room, but it is often used by the judge of that court for the purpose of hearing motions, lunacy proceedings and the great proportion of cases which are tried before the court without a jury. The vault adjoins the main circuit clerk's office. It was shown that both the clerk and his deputy were in the clerk's office at the time Judge Tartar withdrew the names from the jury wheel.

After hearing this testimony the court overruled the motion and this order was entered:

"This is to certify that the present standing jury and the jury summoned was drawn from the jury wheel in compliance in every respect and conformity of the law thereto. I withdrew the names from the jury wheel, transcribed them and delivered them to the clerk. I have followed to the letter of the law the Court of Appeals,"

and the case was tried.

After the trial, in support of a motion for a new trial, the deposition of Charles Landrum, Jr., an attorney, was taken. He stated that on Saturday, the 18th of August, he went to the courthouse in Somerset. (No one mentioned the year, but it was 1962). After inquiry he learned that the circuit judge was in the vault. He found Judge Tartar seated at a small table with an open jury drum on it. At the time he entered the judge was writing names on a piece of paper—presumably he was transcribing the names of jurors. No names were drawn while he was present. The judge was alone when he entered the vault. On cross-examination Landrum testified that the door to the vault was open and everyone was free to pass in and out. He stated that he himself had attended rule day in this same vault.

We have several times held that in the selection of a jury there must be substantial compliance with the procedural steps outlined in the statute, and that "the right and power to disregard any one of these statutory provisions do not lie within the privilege of the judge of the court." Williams v. Com., 254 Ky. 277, 71 S.W.2d 626; Kitchen v. Com., 275 Ky. 564, 122 S.W.2d 121; and Bain v. Com., 283 Ky. 18, 140 S.W.2d 612.

While our opinions achieve unanimity in condemning even the slightest irregularity in the selection of a jury, judgments have not always been reversed because of the deviations.

In the Kitchen case the judge read the names drawn by him to the clerk and the deputy clerk of the court in an audible voice while various members of the bar were present in the courtroom, and the names were written by the clerk or his deputy. The opinion carefully pointed out: "We are not reversing this judgment on the ground there was a violation of Sec. 2443 in drawing the names of the grand and petit jurors from the wheel," but the practice was severely condemned.

In Hopkins v. Commonwealth, 279 Ky. 370, 130 S.W.2d 764, where the ground relied on for reversal was that the panel was not drawn from the jury wheel by the presiding judge in open court and the list of jurors was not delivered by the judge to the clerk in open court, but in the clerk's office, and where the regular judge filed an affidavit which stated that he drew the names from the wheel in open court and later delivered the list to the deputy clerk in the clerk's office, we said:

"This language, taken in connection with section 2241, evidently means that

the circuit judge shall deliver the jury list to the clerk in open court. However, we regard this provision of the statutes as directory and not mandatory. If such slight irregularities as this were permitted to be used as an excuse to obtain a new trial, there would be few trials in which a reversible error would not occur. In the absence of any showing that there was a possibility that the jury list had been tampered with, we are of the opinion that the failure of the circuit judge to comply literally with the directions of the statute was not in any way prejudicial to the defendant's substantial rights."

In Tarrence v. Com., Ky., 265 S.W.2d 40, where the charge was made in an affidavit that the judge in drawing the names from the drum had deviated from the meticulous directions of the statute, but, as was done in the instant case, where the judge placed in the record a statement to the effect that he had selected the jurors according to the statutory directions, we said:

"Be that as it may, the statement of the trial judge supported by the presumption of regularity must be accepted as revealing the facts. Hopkins v. Commonwealth, 279 Ky. 370, 130 S. W.2d 764."

This opinion is of little value to us because the facts concerning the alleged deviation are not set out in the opinion. We presume that such a certification would be conclusive where there is no showing by definite proof that the court had not followed the instructions contained in the statutes.

In Hopkins v. Com., 279 Ky. 370, 130 S. W.2d 764, the judge made a drawing when court was in session but failed to deliver the list to the circuit clerk in open court. This informality was excused on the ground that it was a "slight irregularity." The difficulty with the opinion lies not in the

decision it embodied but in the use of the words "we regard this provision of the statute as directory and not mandatory." Although the quoted language is broad we must interpret its meaning in connection with the facts there presented. There was no irregularity until the court, having discovered that the clerk was not present in open court, carried the list to the clerk's office. We believe the opinion intended that the provision concerning the delivery to the clerk (in an otherwise entirely correct drawing) was "directory and not mandatory"—not the entire section. In the light of many opinions requiring strict adherence to procedural steps designated in the statutes we feel certain that it was not intended that a judge might cavalierly disregard all of them.

When we return to the facts of the instant case and the statute (KRS 29.135), we find a substantial deviation. The statute requires, inter alia, two important steps, (1) that at each term a drawing must be had for the next or succeeding term and (2) it be done in open court.

The terms of the Pulaski Circuit Court are:

| 2nd Monday in January | 24 days |
| " " " February | " " |
| 1st " " May | " " |
| 2nd " " June | " " |
| 1st " " September | " " |
| 2nd " " October | " " |

This case was tried at the September term of court. The jury should have been drawn during the June term which began on the second Monday in June and lasted twenty-four juridical days. That term expired on July 7. The drawing was not had until August 18, long after the June term was over. We are of opinion that in this regard the court's action does not satisfy that portion of the statute which requires that at each term of court the judge shall draw a sufficient number of names to procure jurors for the next term of court.

■ We are next confronted with defining the meaning of the expression "open court" as used in the statutes. This phrase is somewhat ambiguous and indefinite. Backed by ample authority in Townsley v. State, 103 Tex.Cr.R. 508, 281 S.W. 1054, it was said:

"The proceedings of court usually occur in the particular room set apart by the commissioners for holding the sessions of court in, but we think if the court is actually in session, that is 'open' as distinguished from vacation, recess, or adjournment, an act of the court would not be invalid solely because done in the clerk's office in the courthouse, and not in the courtroom."

See also Loke v. State, Tex., 254 S.W.2d 137.

If we accept the foregoing definition it may be seen that the drawing in the vault did not render the act invalid, but under the same definition the act would be invalid because the court was not actually in session.

In Louis Werner Stave Co. v. Marden, Orth & Hastings Co., 2 Cir., 280 F. 601, it was written:

"The expression 'in open court' refers generically to the occasion when the judge is hearing a cause or some part thereof in public, in the sense of the right of the public to attend."

In U. S. v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853, the court held that the term "open court", in a section of the Naturalization Act was used in contradistinction to a judge sitting in chambers.

In Rush v. State, 253 Ala. 537, 45 So.2d 761, it was held the words "open court" mean that it is open for transaction of business of court at a time when the court can properly exercise its functions. The court appeared to have the opinion that any procedure which did not amount to a "star chamber" session was valid. It was pointed out: "This does not mean that the judge must necessarily be acting in the courtroom. The office of the clerk is a part of the quarters provided for the court."

A good number of cases are collected in Vol. 29 of Words and Phrases. Nearly all opinions seem to vary somewhat in individual definitions.

The circuit courts have not had full and complete instructions to guide them in the selection of jurors. The statutes are incomplete and lack artistry. The opinions are not unanimous in thought, so it is easy to understand why there has been a variance in procedure among the circuit courts of this commonwealth.

Without engaging further in semantic exercise to determine the meaning of the phrase "open court" we will attempt to describe the method by which jurors should be selected:

■ During one term the judge should draw the jury list for the succeeding term. This must be done at a regular session of the court held on a juridical day. On that day court should be opened in the ritualistic way and the sheriff or a similar officer should open the court with the legalistic prayer that has been used from time immemorial. Some time during that day, before court is formally recessed or adjourned, the names should be drawn from the jury wheel, preferably in the presence of the sheriff and the clerk, at a time when the public is free to come and go. Even the appearance of a trace of "star chamber" character should be avoided and the act should be performed openly and notoriously. We do not believe that on all occasions it is necessary for the judge to be sitting in the room which has actually been designated as the courtroom, but if he is not acting in the designated courtroom itself, it should be at a place which is temporarily devoted to the uses of the accepted courtroom and at a time when it is generally known that it is so employed.

The facts in the instant case disclose that the jury was selected under conditions

far different from those outlined above. There is not the slightest intimation in the record that the honorable judge who drew the jury list deviated from what he believed to be the proper method of selecting a jury. If the list had been drawn during a regular session of court from the bench in open court, we are certain that the quality of the jury would not have been different.

See also 340 S.W.2d 600.

It is only after the most painstaking lucubration that we have concluded that the highly technical ground such as has been advanced here was sufficient to cause this judgment to be erroneous. The jury system has been almost sacred in our jurisprudence and the general safeguards which are provided must be followed so that there will never be even a slight intimation of disrepute.

The judgment is therefore reversed.