TYSON, Presiding Judge.
Tommie Wright, alias, was indicted for unlawfully assaulting, with intent to murder, one Benjamin Holman. The jury found the appellant “guilty of assault with intent to murder,” as charged in the indictment, and the trial court entered judgment, which set sentence at ten years imprisonment in the penitentiary.
Benjamin Holman testified that he had known the defendant, Tommie Wright, for some thirteen or fourteen years, having grown up in the same neighborhood, and having played ball with him. He testified that in December, 1976, on a Friday night, near Christmas, he was working at the Crown Petroleum Station on 20th Street in the Ensley section of Birmingham, Alabama. He stated that Tommie Wright drove in the station to buy some gasoline, and after pumping $2.00 worth of gas, stated that he did not want to pay for it at that time, that he had a lady in the car, and all he had was $5.00. Holman told Wright that he would have to pay for the gas, Wright started cursing him, but later came back and handed him the money. Holman gave him $3.00 in change.
Holman stated that he subsequently saw Wright near the J.C.C.O., because he was trying to get in school up there, and words were exchanged between the two. On January 26, 1977, Holman was riding in a car with Richard George and Robert Smith and they stopped near a store on 17th Street while George went in to purchase some wine.
According to Holman, the appellant, Tommie Wright, was riding in a car with one Willie Coleman. They were driving up 17th Street at Avenue I. After parking their car, Willie Coleman called to him to come over to the car. As he walked over, Wright began cursing him and saying that he was “dirty” for not letting him have the gas when he had his girl friend with him. Holman stated that he started to back away, and that Wright reached over Coleman and fired a .22 pistol, which struck him in the leg. He stated that he fell, and then began pulling himself away from the car. He stated that Wright got out of the car and fired a second shot, which struck him in the other leg. Wright then came over and pointed the gun at his head and the gun clicked. He stated that he managed to pull himself to his car, and Richard George came out of the store and took him to the police station, then he went to the hospital. He stated that he was treated by Dr. Long and that he had to be on crutches one and a half months, and was out of work for almost a year. Holman stated that his brother swore out a warrant against Wright.
Wright testified that he had known Holman for sixteen or seventeen years, and that he remembered the incident in December, 1976, when he went to the Crown Petroleum Station. Wright testified that he explained to Holman, thinking he was a friend, that he had his girl friend with him, *840 and he would come back later to pay for the gasoline that he had pumped. He stated when Holman objected, he got $5.00 bill from his girl friend and gave it to Holman. Wright stated that Holman told him that he also owed him $2.00 on a loan, and only handed him back $1.00. Wright said that he later saw Holman near the school, and that Holman cursed him and called him a “bitch.” He stated that Holman also threatened him.
On the afternoon of January 26, 1977, Wright stated he was riding in an automobile with Willie Coleman, that they were driving up 17th Street, near Avenue I, when Coleman saw Benjamin Holman and called out to him. Wright indicated that Holman came over to the car and cursed him, and that he then took the pistol and shot him twice, once in each leg. Wright stated that the gun was a nine-shot .22 revolver, and that he only shot Holman because he had threatened him, that he did not intend to kill him.
I.
The sole contention of error concerns the cross-examination of the appellant, Tommie Wright, with reference to a prior conviction in the State of Ohio. The colloquy is as follows (R. pp. 68-69):
“Q. Mr. Wright, you have been convicted of armed robbery, haven’t you?
“MR. YOUNG: Now, wait just a minute, may it please the Court. I object. And—
“A. I don’t mind answering that question.
“MR. YOUNG: Just a minute. Don’t answer that question. I would like to approach the bench, if you would.
“THE COURT: All right.
“(Whereupon, an off the record discussion was then had at the bench.)
“THE COURT: Members of the jury, we will excuse you for just a minute. We will call you back.
“(Whereupon, the jury then left the courtroom, and the following occurred out of the presence and hearing of the jury:)”
After the jury was excused, the trial judge then took voir dire testimony from the appellant, Tommie Wright, who indicated that on August 30, 1966, he had been convicted of armed robbery in Mansfield, Ohio, and given ten to twenty-five years, that this disposed of two cases, but that he only served about six months as his lawyer appealed the case and the case was reversed ,by the Ohio Appellate Court. On retrial, Wright testified that he was acquitted, so that he had no prior record as the jury had found him not guilty.
After conducting this voir dire examination, the trial court then instructed the jury that they were recessed for the afternoon, and that they would resume their deliberation the following morning at 9:00 a. m.
At 9:00 a. m. on June 29, 1977, there was an inquiry by defense counsel as to the status of the record, and the court reporter indicated to counsel that the defendant had replied that “he did not mind answering questions.” The trial court then read into the record the citation from the Ohio Court of Appeals, which is State v. Wright, 11 Ohio App.2d 31, 227 N.E.2d 650, which shows the reversal of the robbery conviction of the appellant. The record then reads as follows (R. pp. 76-79):
“MR. YOUNG: Yes, sir. In view of the nature of the question itself, if it please the Court and the basis on which the District Attorney propounded that question, it being a rap sheet which indicates no disposition at all of the charge of armed robbery merely, we consider the question prejudicial to the Defendant. And we move for a mistrial.
“THE COURT: All right. Overruled. I will instruct the jury to ignore the question. And I will tell them that there was no answer to it, and that they can ignore the question that was asked by Mr. Gom-any just before we adjourned yesterday.
“MR. YOUNG: Are you going to instruct the jury that the question is improper and that they should ignore it?
“THE COURT: I will say that.
“MR. YOUNG: Yes, sir. Thank you.
*841 “THE COURT: Of course, I’m just saying between us that Mr. Gomany had no way of knowing that. I’m not criticizing him. But before the jury I will say that the question was improper, and to ignore it.
“MR. YOUNG: Yes, sir. Thank you.
“THE COURT: Now, is the victim here?
“MR. GOMANY: Judge, I told him to be here at 8:00 o’clock.
“THE COURT: All right. Well, we will let the jury in and proceed.
“MR. YOUNG: Go on back up on the stand.
“(Whereupon, the jury then entered the courtroom, and the following proceedings occurred in their presence and hearing:)
“THE COURT: Members of the jury, as I stated to ya’ll in the very beginning of the case, what the attorneys say is not evidence in the case. Yesterday a question just before we adjourned was asked by Mr. Gomany. I want to ask you all to ignore that question, to erase it from your minds. It was an improper question.
“And do all of you feel that you can ignore that question that was asked? All right. I see no hands. And all are nodding so favorably or affirmatively. All right. We will proceed then.
“MR. YOUNG: Thank you.
“THE COURT: All right. Who was questioning?
“MR. YOUNG: Mr. Gomany had just taken him on cross-examination and propounded that first question.
“THE COURT: All right.
CROSS EXAMINATION (Continued)
‘'BY MR. GOMANY:
“Q. Tommie, you do admit to shooting Benjamin Holman on January the 26th?
“A. Yes, sir.
“Q. Twice?
“A. Twice.
“Q. You shot him twice.
“A. Yes, sir.
“Q. And then you fired the gun again?
“A. No, sir.
“Q. You deny that?
“A. I shot at him once, shot at him again and it clicked, and then I shot it again and hit him. And I know he had to have powder burns on his legs no further than that from him.
“Q. And you pulled the trigger three times?
“A. Yes, sir.
“Q. And this was a .22 luger?
“A. A .22 — it shoots hollow points, nine shots. It shoots hollow points.
“Q. And were they long rifles or longs?
“A. Longs.”
Appellant’s counsel cites this Court to two cases which he contends require a reversal of the case at bar. They are: State of Arizona v. Stago, 82 Ariz. 285, 312 P.2d 160; and United States v. Semensohn, 421 F.2d 1206 (2 Cir.)
In Stago, the Arizona Supreme Court reversed because the prosecutor, in attempting impeachment of the appellant, asked about a prior conviction which he was not prepared to prove even though the trial judge instructed the jury to disregard the question.
In Semensohn, the case was reversed because of the cumulative effect of questions asked by the prosecuting attorney concerning prior convictions over defense’s objection. The record showed that the defendant had plead guilty to a lesser charge than inquired about, and the comments from the court were inadequate to dispel the prejudicial nature of the prosecutor’s inquiry.
No such situation exists in the case at bar, as the record here affirmatively reflects that no answer was given in the presence of the jury by the appellant to the question asked. Rather, the appellant’s reply was, “I don’t mind answering that question.” Immediately thereafter, the jury was sent out and heard nothing further until the trial court the following morning instructed them, not only that the question had been an improper one and for them to ignore it and not consider it in their deliberations, but went further and affirmatively polled each member of the jury concerning this question. Clearly, therefore, any possi *842 ble basis for a mistrial was eradicated in the case at bar. Shadle v. State, 280 Ala. 379, 194 So.2d 538; Adair v. State, 51 Ala.App. 651, 288 So.2d 187; Retowsky v. State, Ala.Cr.App., 333 So.2d 193; Napier v. State, Ala.Cr.App., 337 So.2d 62.
We have carefully examined this record and find same to be free from error. The judgment is
AFFIRMED.
All the Judges concur.